**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 23cr10186-ADB** |
| | ) | |
| **TYRRE HERRING,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## SENTENCING MEMORANDUM

Defendant Tyrre Herring is a violent member of the Heath Street Gang, who has engaged in multiple crimes involving violence and firearms. See PSR at ¶¶ 32-35; 67-70. ***Defendant admits that he was the shooter in a 2020 gang-related attack in rival gang territory*** in which Defendant fired several shots on the streets of Boston. Id. at ¶¶ 32-35. Defendant was also involved in dealing counterfeit oxycodone pills which contained fentanyl - a highly dangerous crime that exposes drug users to overdoses and death. Id. at ¶¶ 25-30. Defendant's gang-related criminal activities put the community at risk through violence on the street and degraded the living conditions of his neighborhood - the Mildred C. Hailey Apartments - by raising the specter of ongoing gang violence (not only from the Heath Street Gang but also its rivals targeting the area of the Mildred C. Hailey Apartments for retaliatory violence).

Given the circumstances of this case (especially the attempted murder in which Defendant was involved), the Government recommends a sentence of 120 months' incarceration (which is *below* the low-end of the Sentencing Guidelines range) to be followed by 3 years of supervised release, no fine and a $100 mandatory special assessment. As one of the terms of his supervised release, the Government requests that Defendant be barred from entering or staying at

the Mildred C. Hailey Apartments. The Government's recommended sentence aligns with the factors set forth in 18 U.S.C. § 3553. In particular, the sentence is necessary to protect the public and to deter both Defendant and others from similar criminal conduct in the future.

## THE SENTENCING GUIDELINES

"'Relevant conduct in a RICO case' for purposes of § 1B1.3 of the Guidelines 'includes all conduct reasonably foreseeable to the particular defendant in furtherance of the RICO enterprise to which he belongs.'" United States v. Sandoval, 6 F.4th 63, 105 (1st Cir. 2021) (citations omitted). "The District Court must find such relevant conduct by a preponderance of the evidence." Id. "Any such conduct becomes a 'cross reference' that may be used to set the offense level." Id. Defendant's applicable Sentencing Guidelines are based primarily on the conspiracy to commit murder which resulted in a shooting in the area controlled by the H-Block street gang on April 23, 2002. Defendant is subject to an adjusted offense level 33. Defendant is a CHC V. After acceptance, Defendant's incarceration range is 151-188 months pursuant the PSR's calculations. See PSR at ¶ 137.

## DEFENDANT'S CRIMINAL CONDUCT

The Heath Street Gang originated in what is now the Mildred C. Hailey Apartments, a housing development in the Jamaica Plain section of Boston. The gang's criminal activities have had a particularly negative impact on the members of the public living (including families) living in housing development through the gang's violence (including violent/threatening conduct on site at the development as well as retaliatory attacks/shootings from rival street gangs targeting the housing development), drug dealing (in the housing development and in the nearby area), and the active recruitment of children from the housing development into the gang. The Heath Street

Gang's activities have also severely impacted other areas of Boston, as well as surrounding communities. As a prime example, the Heath Street Gang has been involved in a long-standing conflict with the Mission Hill Gang which has resulted in Heath Street Gang members/associates committed numerous murders/shootings in the Mission Hill area, including public housing developments. Similarly, the Heath Street Gang has also had an ongoing bloody conflict the H-Block Gang which has resulted in numerous shootings not only at the Mildred C. Hailey Apartments, but also in the section of Roxbury where the H-Block Gang operates – these shootings include the one committed by Defendant in April 2020 as discussed below.

Defendant is presently 29 years old. His criminal history began at the age of 16, and he was subsequently held in juvenile custody. Id. at ¶ 66. While in juvenile custody, "his placement was frequently changed and the defendant reported that was due to him engaging in fights and 'gang issues.'" Id. At age 17, Defendant was arrested at the Mildred Hailey Housing Development in possession of an illegal firearm with a defaced serial number. Id. at ¶ 67. He was again placed into juvenile custody. At age 19, in 2016, Defendant was convicted of (1) Armed Robbery, (2) Assault with a Dangerous Weapon; (3) Carry Firearm without a License; (4) Possess a Large Capacity Firearm; (5) Carry Loaded Firearm without a License; and (6) Receive a Firearm with Defaced Serial Number. Id. at ¶ 68. Defendant was sentenced to over 2 years in custody for these crimes. Not only did Defendant commit these various crimes, he also repeatedly violated the terms of his state probation throughout these years. Id. at ¶ 66-68.

In 2020, Defendant was involved in a murder conspiracy targeting the rival H-Block Gang. The H-Block Gang's territory includes the Humbolt Avenue area of Roxbury. This conspiracy result in the exchange of gun fire on the public streets in Roxbury and one of

Defendant's cohorts being shot in the leg. As to this event, ***Defendant admitted in the PSR that he was the shooter and Devonne McDonald-Jones "acted as the driver and get-away driver for the shooting."*** Id. at ¶ 35.

As to the shooting/murder conspiracy,

1. At approximately 2:43 a.m., investigators recovered video of a dark-colored vehicle which investigators believe is consistent with the 2017 Accord registered to McDonald-Jones turning on Townsend Street from Harold Street (this area is within the H-Block Gang's territory). The dark colored sedan dropped off the two men in H-Block Gang territory. The two men were subsequently identified by their clothes and other evidence as (1) Defendant, and (2) Anthony Jackson.

2. Approximately one minute later, at 2:44 a.m., Defendant and Jackson were captured on video walking from Townsend Street onto Harold Street.

3. At approximately 2:46 a.m., Defendant and Jackson were video recorded at the intersection Harold and Harrishof Street walking towards central H-Block Gang territory over the next minutes.

4. At approximately 2:48 a.m., Herring and Jackson were recorded walking towards the area of 58-60 Holworthy Street.

5. Approximately two minutes later, at 2:50 a.m., a grey SUV was recorded approaching 60 Holworthy Street – consistent with a potential response by members of the H-Block Gang to Defendan and Jackson walking in H-Block territory.

6. Approximately 33 seconds later, there are three successive ShotSpotter alerts in the area indicating multiple shots (potentially 10 shots) being fired in the area of Holworthy Street. The alerts occurred at 2:50:33 a.m. (1 round detected), 2:50:38 a.m. (2 rounds detected) and 2:50:47 a.m. (7 rounds detected).

7. Ballistic evidence was subsequently recovered on Holworthy Street and consistent with multiple shots being fired as per the ShotSpotter alerts.

8. As to the firing of these shots, at approximately 2:50:47 a.m., video captured Defendant (identified by his clothing) emerge from an alley and walk down the driveway of 60 Holworthy Street before shooting from the driveway at the SUV which had past 60 Holworthy Street.

9. It was subsequently identified that Jackson lost one of his sneakers at 60 Holworthy Street, which was recovered by investigators.

10. At approximately 2:51:23 a.m., Defendant and Jackson were recorded running from the area at the intersection Harold Street and Harrishof Street - retracing their entry to the area - with Jackson appearing to have some problems running (consistent with him limping).

11. At approximately 2:51:42 a.m., McDonald-Jones' vehicle was captured on video at the intersection of Harold Street and Harrishof Street leaving the area at high speed.

12. At approximately 3:01 a.m., McDonald-Jones' vehicle was identified at Brigham's and Women's Hospital where Jackson subsequently received emergency treatment for a bullet wound in his thigh. Officers identified that there was blood in the back passenger seat of the vehicle – consistent with Jackson's leg wound.

The Government believes it to be highly significant for sentencing purposes that Defendant now seeks to minimize the planned, cold-blooded nature of this attempted murder by claiming that Defendant did not go to that area of Boston to commit the shooting but rather to meet some girls. *See* Def. Sentencing Memo. at p. 5. Defendant's meritless claim is rebutted by the following facts:

1. As a Heath Street Gang member, Defendant engaged in highly dangerous conduct by entering rival H-Block Gang territory where he could be attacked immediately by rival gang members and potentially killed;

2. Defendant was armed with a loaded handgun – a fact inconsistent with going to meet women;

3. Defendant was not dropped off at a specific location, as he would have been if he was going to meet women, but rather was dropped off and then walked deeper into H-Block Gang territory, which is consistent with Defendant stalking rival gang members; and, most importantly,

4. ***Defendant admits that he had a get-away driver*** (McDonald-Jones) who picked Defendant and the other individual up immediately after the shooting. People do not bring get-away drivers if they are going to a social meeting – they bring get-away drivers when they are going to kill rival gang members.

Defendant conspired to commit a planned, cold-hearted, gang-related murder and should be held accountable for this act.

Defendant's dangerous conduct continued after this shooting. As noted in the PSR, in 2021, Defendant was actively dealing counterfeit oxycodone pills, which contained fentanyl – a far more dangerous drug which could lead to overdoses and deaths. *See* PSR at ¶¶ 25-30. Not only was Defendant dealing dangerous drugs, Defendant sought to arrange an illegal firearm sale with Charles Bomman (a violent Heath Street Gang member with an extensive criminal record) in March of 2021. Id. at ¶ 31. In November 2021, Defendant's girlfriend had an abuse prevention order taken out against him pursuant to which she stated: "she and defendant have 'serious' physical altercations in front of their children, he destroyed her apartment, and broke multiple phones. She stated that she can no longer handle the physical, emotional, and verbal abuse." Id. at ¶ 106. Consistent with this pattern, in 2025, Defendant received disciplinary reports while he was incarcerated in the state system, including (1) a report for abusive or threatening language, insolence, disruptive behavior, and violation of rules, and (2) a report for fighting, disruptive behavior, disobeying an order, and violation of rules. Id. at ¶ 69.

As established by this ongoing history of violence, firearms possession, and drug trafficking, along with repeated probation violations, Defendant presents a clear danger to the community. A sentence of 120 months is merited to protect the community from Defendant. It further provides the necessary deterrence not only for Defendant but also for other members/associates of Boston street gangs who may seek to commit similar gang-related crimes in the future.

## CONCLUSION

The Government's proposed sentence of 120 months' incarceration, to be followed by 3 years of supervised release, is an appropriate sentence for all the reasons set forth in 18 U.S.C. 3553.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney States

Date: September 25, 2026

By: *<u>/s/ Michael Crowley</u>*
MICHAEL CROWLEY
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, Michael Crowley, Assistant United States Attorney, do hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*<u>/s/ Michael J. Crowley</u>*
MICHAEL J. CROWLEY
Assistant U.S. Attorney